UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER M. MAGEE,<br>    Petitioner, | Case No. 1:21-cv-123 |
| vs. | Barrett, J.<br>Litkovitz, M.J. |
| WARDEN, CHILLICOTHE<br>CORRECTIONAL INSTITUTION,<br>    Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution, in Chillicothe, Ohio, has filed a pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his convictions in the Clermont County, Ohio Court of Common Pleas. This case is before the Court on the petition, respondent's return of writ, and petitioner's reply to the return of writ. (Docs. 1, 6, 8).

In the return of writ, respondent asserts that three of petitioner's six grounds for relief are procedurally defaulted because they were not raised in the Ohio state courts. (Doc. 6, at PageID 596-600). Petitioner asserts that any default of these claims is due to appellate counsel's failure to raise them on direct appeal. (*See* Doc. 1, at PageID 12; *see also* Doc. 8, at PageID 610). However, petitioner has not yet presented any ineffective-assistance-of-appellate-counsel (IAAC) claims to the state courts. (*See* Doc. 6, at PageID 599). Because a state-court remedy in the form of a delayed application to reopen the direct appeal remains for petitioner to present his IAAC claims to the state courts, *see* Ohio R. App. P. 26(B)(2)(b), the undersigned recommends that the petition be stayed to allow petitioner to exhaust these claims.

**I.    PROCEDURAL HISTORY**

### State Convictions and Sentence

On November 1, 2018, the Clermont County, Ohio grand jury returned a seven-count

indictment charging petitioner with Aggravated Robbery (Count One), Felonious Assault (Counts Two and Three), Assaulting a Police Dog (Count Four), Resisting Arrest (Count Five), Attempted Safecracking (Count Six), Breaking and Entering (Count Seven), and Vandalism (Count Eight). (Doc. 5, Ex. 1). Petitioner, through counsel, entered pleas of not guilty and not guilty by reason of insanity (NGRI). (Doc. 5, Ex. 4).

On January 24, 2019, following a competency evaluation and a hearing on the matter, the trial court found petitioner competent to stand trial. (Doc. 5, Ex. 8). On January 31, 2019, petitioner filed a Motion for Second Psychiatric Examination of Defendant's Mental Condition at the Time of the Offense and for Second Competency Evaluation. (Doc. 5, Ex. 9). The trial court granted the motion. (Doc. 5, Ex. 10). On March 14, 2019, following the second evaluation, the trial court again found petitioner competent to stand trial. (Doc. 5, Ex. 12).

Thereafter, on July 22, 2019, the state filed a motion *in limine* to exclude any evidence or reference to petitioner's mental health during trial. (Doc. 5, Ex. 15). The court granted the motion on July 30, 2019, stating that the motion "may be subject to review once a fuller context of the evidence is presented at trial." (Doc. 5, Ex. 16). Defense counsel did not revisit the issue at trial. (*See* Doc. 5, Ex. 22, at PageID 188).

On August 27, 2019, a jury found petitioner guilty as charged on Counts One through Seven. (Doc. 5-2, at PageID 549-50). The vandalism charge in Count Eight was dismissed at the time of trial and, thus, not presented to the jury. (*See* Doc. 5-3, at PageID 561-62). Petitioner was sentenced to an aggregate term of imprisonment of sixteen years in the Ohio Department of Rehabilitation and Correction. (Doc. 5, Ex. 18).

2

## Direct Appeal

Represented by different counsel than at trial, petitioner filed a timely appeal, raising the following three assignments of error:

1. The trial court erred as a matter of law by refusing to allow evidence supporting the NGRI plea which was never withdrawn.

2. The jury erred by finding appellant guilty when the evidence was insufficient to support a conviction.

3. The verdict was against the weight of the evidence.

(Doc. 5, Ex. 20). On September 8, 2020, the Ohio Court of Appeals affirmed the judgment of the trial court. (Doc. 5, Ex. 22). The Ohio Supreme Court denied further review on December 29, 2020. (*See* Doc. 5, Ex. 25). Petitioner did not file a petition for certiorari in the United States Supreme Court. (*See* Doc. 1, at PageID 3).

## Federal Habeas Corpus

In February 2021, petitioner filed the instant federal habeas corpus petition, raising the following six grounds for relief:

> **GROUND ONE:** The trial court refused to allow evidence supporting the NGRI plea which was never withdrawn.
>
> **Supporting Facts:** My whole defense and actions was based on my mental capacities. The judge placed an order not to discuss my mental capacities. Plus my attorney also told me not to discuss it. Therefor[e], I had no defense. The court clinic determined it was likely I had a severe mental defect[] at the time of the incident.
>
> **GROUND TWO:** The jury erred by finding Appellant guilty when the evidence was insufficient to support a conviction.
>
> **Supporting Facts:** As to Count 3 I didn't have control of the dog. I am deaf in my right ear, I never even heard them say they were releasing the K-9. It was the first actual case the dog had been used. I would've thought the dog handler to have

3

control of the dog being used that close to unknown officers while it was in attack mode.

As to Count 6 I pulled up to the ATM to withdraw[] money from my card. When I reached into my pocket to get my card, the chrome stick magnut [sic] ended up in my hand, as I[']m a mechanic it is not unusual to have stuff in my pockets. Apparently I inserted in the machine was the wrong card or was backwards. I made a gesture with my hand (with chrome thing in it) for the machine to come on and work. I had also tried to use the card at a gas station prior to this and it wouldn't work there either so I paid cash. I had left my new identical card at home that has a chip in it by accident. It was never proven that I attempted, tampered altered, meddle, or did anything else to the safe.

**GROUND THREE:** The verdict was again[s]t the weight of the evidence.

**Supporting Facts:** The jury clearly lost its way by finding that Appellant knowingly caused harm and that Appellant intended to break into a vault, safe or strongbox.

**GROUND FOUR:** The officers lied on the stand and change[d] testimony at trial versus initial statements in discovery.

**Supporting Facts:** The majority of the officers involved in said it appeared I had a box cutter on the stand they were definitely sure of what there [sic] saying I had and where the blade was, but the blade was found outside the box cutter at the bottom of the stairs. The evidence (box cutter and blade) was taken picture of in different places.

**GROUND FIVE:** Insufficient counsel: erred in removal of NGRI plea, erred ineffectively representing myself, erred in requesting fingerprints on box cutter like I suggested erred by not having me evaluated by my own Drs. like I suggested.

**GROUND SIX:** Box cutter be considered a deadly weapon. There is testimony and statements in my discovery as to seeing the blade in the knife and/or how far it was extended. The blade was found outside of the box cutter, not broken.

The day before trial my lawyer met with the prosecutor and they took the box cutter apart and tried to attach the blade to it. It would only extend about 1/8 inch when put back together. How could this be considered a deadly weapon in the state of Ohio but it was barely addressed at trial.

(Doc. 1, at PageID 6-13).

4

Respondent asserts that Grounds Four through Six of the petition are procedurally defaulted because they were not raised in the Ohio state courts. (Doc. 6, at PageID 596-600).[1] Petitioner asserts that his failure to previously raise these claims is attributable to appellate counsel who "said he was limited in his argument after [petitioner] suggested more issues to appeal." (Doc. 1, at PageID 12; *see also* Doc. 8, at PageID 610). However, as previously noted, petitioner has not presented any IAAC claims to the Ohio courts. (*See* Doc. 6, at PageID 599).

## II. THE PETITION SHOULD BE STAYED SO THAT PETITIONER MAY EXHAUST HIS STATE COURT REMEDIES.

It is well-settled that appellate counsel's ineffectiveness may constitute cause for a procedural default occurring in an appeal as of right to the Ohio Court of Appeals. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Edwards*, 529 U.S. at 451. As such, for counsel's alleged ineffectiveness to constitute cause to overcome a procedural default, that claim itself must first be exhausted in the state courts. *Id*. at 452-53.

An application for a writ of habeas corpus by a state prisoner shall not be granted unless the petitioner has exhausted his state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect petitioner's rights. 28 U.S.C. § 2254(b)(1). A state defendant with federal constitutional claims is required to first fairly present those claims to the state courts for consideration because of the

---

[1] Notably, in the return of writ respondent also asserts that petitioner's claim in Ground Two that he is deaf in one ear is procedurally defaulted. (Doc. 6, at PageID 591-92). Petitioner does not address any procedural default of this claim in his petition or respond to this assertion in his reply to the return of writ, and the Court therefore does not reach that issue at this time.

5

equal obligation of the state courts to protect the constitutional rights of criminal defendants and in order to prevent needless friction between the state and federal courts. *See Anderson v. Earless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971). Under the "fair presentation" requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which, in Ohio, includes discretionary review in the Ohio Supreme Court. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999); *Hafley v. Sawders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99–100 (6th Cir. 1985).

If the petitioner fails to fairly present his claims through the requisite levels of state appellate review, but still has an avenue open to him in the state courts by which he may present the claims, his petition is subject to dismissal without prejudice for failure to exhaust state remedies. *See* 28 U.S.C. § 2254(c). Although the exhaustion requirement is not jurisdictional, and an application for writ of habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust state remedies, *see* 28 U.S.C. § 2254(b)(2), there is a strong presumption in favor of requiring exhaustion of state remedies. *See Cranberry v. Greer,* 481 U.S. 129, 131 (1987). A "mixed" petition containing both unexhausted claims and claims that have been fairly presented to the state courts is subject to dismissal without prejudice on exhaustion grounds. *Rose v. Lundy,* 455 U.S. 509, 510, 522 (1982).

The 1996 Antiterrorism and Effective Death Penalty Act (AEDPA) "preserve[s] *Lundy*'s total exhaustion requirement" and "impose[s] a one-year statute of limitations on the filing of federal habeas petitions." *Rhines v. Weber,* 544 U.S. 269, 275 (2005). Some federal courts (including the Sixth Circuit) have adopted a "stay-and-abeyance" procedure to ensure habeas

6

review is not precluded in the class of cases where a timely-filed federal habeas petition is dismissed on exhaustion grounds and the petitioner subsequently returns to federal court to present his claims in a renewed petition after exhausting his state remedies only to find that his claims are barred from review by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). *See, e.g., Griffin v. Rogers,* 308 F.3d 647, 652 & n.1 (6th Cir. 2002); *Palmer v. Carlton,* 276 F.3d 777, 778–81 (6th Cir. 2002).

In *Rhines,* 544 U.S. at 276, the Supreme Court affirmed that district courts have the discretion to issue stays in habeas cases, but such discretion is circumscribed to the extent it must "be compatible with AEDPA's purposes." The Court pointed out that one of AEDPA's purposes is to "reduce delays in the execution of state and federal criminal sentences" based on the "well-recognized interest in the finality of state judgments." *Id.* (quoting *Woodford v. Garceau,* 538 U.S. 202, 206 (2003), and *Duncan v. Walker,* 533 U.S. 167, 179 (2001)). In addition, AEDPA's statute of limitations tolling provision was intended to "reinforce[ ] the importance of *Lundy*'s "simple and clear instruction to potential litigants: before you bring any claims in federal court, be sure that you first have taken each one to state court." *Id.* at 276–77 (quoting *Lundy,* 455 U.S. at 520).

> The Court went on to determine that:
>
> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition . . . .
>
> For these reasons, stay and abeyance should be available only in limited circumstances.

*Id.* at 277.

The Court held that stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that, "even if a petitioner had good cause for that failure," it would be an abuse of discretion for the court to grant a stay where the unexhausted claims "are plainly meritless" or the "petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 277–78. On the other hand, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

In the absence of clear guidance from the Supreme Court, the federal courts have differed as to what constitutes "good cause" within the meaning of *Rhines*. *See, e.g., Williams v. Hurley*, No. 2:05-cv-985, 2006 WL 1650771, at *10–11 (S.D. Ohio June 6, 2006) (Report & Recommendation) (King, M.J.) (discussing the split in authority as to whether "cause standard of *Rhines* requires a lesser showing than that for procedural default" and whether ineffective assistance of counsel during state post-conviction proceedings may constitute "good cause for failure to exhaust claims in state proceedings"), *adopted,* 2006 WL 1804550 (S.D. Ohio June 28, 2006) (Holschuh, J.) (unpublished); *see also Tolliver v. Sheets,* No. 2:05-cv-1161, 2007 WL 2462650, at *17–18 (S.D. Ohio Aug. 27, 2007) (Smith, J.; King, M.J.) (unpublished).

In *Pace v. DiGuglielmo,* 544 U.S. 408, 416 (2005), the Supreme Court stated that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily

8

constitute 'good cause' for him to file" a petition containing unexhausted claims in the federal court. Some courts have concluded that this statement in *Pace* supports a more expansive definition of good cause. *See, e.g., Tullis v. Kontah,* No. 2:06cv1025, 2007 WL 915197, at *5–6 (S.D. Ohio Mar. 26, 2007) (Graham, J.; King, M.J.) (unpublished) (citing Ninth Circuit decision in *Jackson v. Roe,* 425 F.3d 654, 661–62 (9th Cir. 2005), and *Baker v. Horn,* 383 F. Supp. 2d 720, 747 (E.D. Pa. 2005)); *see also Hnatiuk v. Trombley,* No. 06-13880, 2008 WL 3305157, at *4 (E.D. Mich. Aug. 11, 2008) (unpublished) (quoting *Rhines v. Weber,* 408 F. Supp. 2d 844, 849 (D.S.D. 2005) (on remand from Supreme Court's decision in *Rhines*)). In *Tullis,* after detailing the "broad and varied" split in authority, the Court concluded with the following quotation from *Riner v. Crawford,* 415 F.Supp.2d 1207, 1209–11 (D. Nev. 2006):

> [T]he discussions by the Pennsylvania court in *Baker* and the Ninth Circuit in *Jackson* support . . . [the] conclusion that the good cause standard applicable in consideration of a request for stay and abeyance of a federal habeas petition requires the petitioner to show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control, such as the actions of counsel either in contravention of the petitioner's clearly expressed desire to raise the claim or when petitioner had no knowledge of the claim's existence.

*Tullis, supra,* 2007 WL 915197, at *6.

In Ohio, "[c]laims of ineffective assistance of appellate counsel may be raised in an application for reconsideration in the court of appeals [now an App. R. 26(B) application for reopening] or in a direct appeal to the Supreme Court pursuant to Section 2(B)(2)(a)(iii), Article IV of the Ohio Constitution." *State v. Green,* Nos. 2008-A-0009, 2008-A-0010, 2008 WL 4216426, at *2 (Ohio Ct. App. 11 Dist. Sept. 12, 2008) (unpublished) (quoting *State v. Murnahan,* 584 N.E.2d 1204, 1205 (Ohio 1992), *superseded on other grounds by rule as stated*

9

in *State v. Davis,* 894 N.E.2d 1221, 1223-1225 (Ohio 2008)) (alteration in original). Petitioner has not pursued an application to reopen his appeal pursuant to Ohio App. R. 26(B) or otherwise presented his IAAC claims to the Ohio courts. *See, e.g., Childers v. Warden,* Case No. 2:13-cv-991, 2014 WL 3828429, at *3 (S.D. Ohio Aug. 4, 2014) ("Petitioner may still obtain review of [his IAAC] claim by filing a delayed Rule 26(B) application in the state appellate court, where a claim of ineffective assistance of appellate counsel properly is raised. Petitioner has not done so. This action therefore is unexhausted.").

Because petitioner has an available avenue of relief in the state courts to exhaust his IAAC claims through a delayed Rule 26(B) application, the Court must next address whether the petition should be dismissed without prejudice to renewal upon petitioner's exhaustion of his state remedies, or whether the instant proceedings should be stayed and held in abeyance while petitioner exhausts his claims in the state courts. *Cf. Bridgeman v. Warden,* No. 3:12cv54, 2012 WL 5877527, at *4 (S.D. Ohio Nov. 20, 2012) (Ovington, M.J.) (Report & Recommendation), *adopted*, 2012 WL 6616352 (S.D. Ohio Dec. 19, 2012) (Rice, J.).

In this case, the Court recommends that the petition should be stayed so that petitioner may attempt to exhaust his IAAC claims through a delayed Rule 26(B) application in the state appellate court and, in the event of an adverse judgment, through a subsequent appeal to the Ohio Supreme Court. The Court is unable to conclude at this juncture that petitioner's unexhausted IAAC claims are "plainly meritless." *Cf. Johnson v. Scutt*, No. 11-cv-11782, 2011 WL 1792700, at *2 (E.D. Mich. May 11, 2011) (unpublished) (finding claims not to be "plainly meritless" for purposes of stay and abeyance analysis where the claims were "federal claims and [were] cognizable on federal habeas review") (citing *Wagner v. Smith*, 581 F.3d 410, 419, nn. 4 & 5

10

(6th Cir. 2009)). Further, as petitioner claims that it was "hard for him to ex[haust] appeal remedies" because he did not have a copy of the trial-court transcripts until April 21, 2021 (Doc. 8, at PageID 610), the Court cannot conclude at this time that petitioner engaged in abusive litigation tactics or intentional delay by not previously raising his IAAC claims in the state courts. *Rhines*, 544 U.S. at 277-78. Moreover, if the Court were to dismiss the petition without prejudice instead of staying the case, any subsequent petition filed by petitioner raising the claims alleged herein may be subject to dismissal on statute of limitations grounds.

Accordingly, in sum, after weighing the *Rhines* factors, and out of concern that the dismissal of the petition at this juncture might unreasonably impair future federal review of petitioner's ground for habeas corpus relief, it is **RECOMMENDED** that the instant federal habeas petition be **STAYED** while petitioner is afforded the opportunity to fully exhaust his state court remedies. To ensure that judicial and administrative resources are conserved, it is **FURTHER RECOMMENDED** that the stay take the form of an administrative stay and that the case be terminated on the Court's active docket.

## IT IS THEREFORE RECOMMENDED THAT:

1. The petition (Doc. 1) be administratively **STAYED** and **TERMINATED** on the Court's **active docket** pending petitioner's exhaustion of his Ohio remedies through a delayed Rule 26(B) application in the state appellate court. The stay should be conditioned on petitioner's filing a motion to reinstate the case on this Court's active docket within **thirty (30) days** after fully exhausting his state court remedies through the requisite levels of state appellate review. Petitioner should be granted leave to reinstate the case on the Court's active docket when he has exhausted his Ohio remedies based on a showing that he has complied with the

11

conditions of the stay.

2. A certificate of appealability should not issue under the standard set forth in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), which is applicable to this case involving a recommended stay of the petition so that petitioner can exhaust available state court remedies. *Cf. Porter v. White*, No. 01-cv-72798-DT, 2001 WL 902612, at *3 (E.D. Mich. Aug. 6, 2001) (unpublished) (citing *Henry v. Dep't of Corrections*, 197 F.3d 1361 (11th Cir. 1999) (pre-*Slack* case)) (certificate of appealability denied when case dismissed on exhaustion grounds). *See generally Carmichael v. White*, 163 F.3d 1044, 1045 (8th Cir. 1998); *Christy v. Horn*, 115 F.3d 201, 203-206 (3d Cir. 1997) (order staying habeas petition to allow exhaustion of state remedies is appealable collateral order). "Jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling that petitioner has failed to exhaust state court remedies and that the case should be stayed (as opposed to dismissed without prejudice) pending exhaustion of such remedies.[2]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

Date: 9/30/2021

Karen L. Litkovitz
United States Magistrate Judge

---

[2]Because this Court finds the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated viable constitutional claims for relief in his habeas petition. *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER M. MAGEE,<br>    Petitioner, | Case No. 1:21-cv-123 |
| vs. | Barrett, J.<br>Litkovitz, M.J. |
| WARDEN, CHILLICOTHE<br>CORRECTIONAL INSTITUTION,<br>    Respondent. | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

13